**CITIBANK, N.A., as Indenture Trustee of the Lehigh Harbor Terminal Railway Company Mortgage Indenture, dated February 1, 1924, as Supplemented, Petitioner,**

v.

**John P. FULLAM, United States District Judge, Eastern District of Pennsylvania, and Robert C. Haldeman, Trustee of the Lehigh Valley Railroad Company, Debtor, Respondents.**

No. 77–2604.

United States Court of Appeals,
Third Circuit.

Argued March 30, 1978.

Decided June 28, 1978.

---

John E. Hoffman, Jr., Andrew S. O'Connor, Shearman & Sterling, New York City, for Citibank, N.A., as Indenture Trustee.

William R. Traub, Jared I. Roberts, Duane, Morris & Heckscher, Philadelphia, Pa., for Robert C. Haldeman, Trustee of the Lehigh Valley Railroad Co.

Before GIBBONS, MARIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

The petitioner, Citibank, N.A., seeks issuance of a writ of mandamus or prohibition to compel United States District Judge John P. Fullam of the Eastern District of Pennsylvania to comply with this court's earlier order in *In re Lehigh Valley R.R.*, 558 F.2d 137 (3d Cir. 1977). In that case, we directed the district court not to use rent from secured property to finance the expenses of reorganizing the debtor's estate unless it found "both that the funds necessary to meet the operating deficits are not available elsewhere and that there is a probable benefit or likely absence of injury to the Bondholders." *Id.* at 150. Because we agree with the petitioner that Judge Fullam has failed to comply with that order, we grant the requested relief.

### I.

On July 24, 1970, the Lehigh Valley Railroad Company commenced reorganization proceedings under § 77 of the Bankruptcy

Act, 11 U.S.C. § 205 (1964). In 1973, while those proceedings were still pending, Congress enacted the Regional Rail Reorganization Act,[1] which called for the preparation of a Final System Plan for transferring certain rail properties from railroads in reorganization to Consolidated Rail Corporation.[2] The constitutionality of the Rail Act was upheld by the Supreme Court in *Regional Rail Reorganization Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The trustee of the Lehigh Valley Estate continued to operate a railroad system until April 1, 1976, when most of the railroad's properties were transferred to Conrail pursuant to the Final System Plan issued on July 26, 1975.[3] From the time of that transfer, the Lehigh Valley trustee has had no further obligation to operate ongoing railroad facilities. Proceedings to reorganize Lehigh Valley under § 77 of the Bankruptcy Act have continued since that date.[4]

The petitioner is the successor trustee under the Lehigh Valley Harbor Terminal Railway Company First Mortgage Indenture, dated February 1, 1924, as supplemented. That indenture secures the payment of principal, in excess of $4 million, and interest on the Lehigh Valley Railroad's 5% First Mortgage Gold Bonds, which are due in 1984. The bonds and the indenture require Lehigh Valley to pay interest on the bonds on February 1 and August 1 of each year. In order to secure the bondholders' claims, the indenture grants to the petitioner an interest in certain non-operating property owned by Lehigh Valley known as the Claremont Terminal Property. The indenture also provides that if Lehigh Valley defaults in its interest payments and if such default continues for sixty days, Citibank is entitled to collect all earnings, income, and rent from the mortgaged property. The bondholders have received no interest payments from Lehigh Valley since reorganization proceedings commenced on July 24, 1970. During the course of the reorganization proceedings, the trustee of the Lehigh Valley Estate has used the income from the Claremont Terminal Property to meet the current expenses of administering the estate. That property generates an annual lease income of almost $350,000, or approximately 76% of the total lease rentals derived from the holdings of the debtor's estate.

Our prior decision in *In re Lehigh Valley R.R.*, 558 F.2d 137 (3d Cir. 1977), resulted from a petition filed by Citibank, as indenture trustee, to stop the debtor's trustee from using the rent from the mortgaged property to pay the expenses of administering the estate. Specifically, Citibank petitioned the district court to order the trustee to deposit the rental monies in an escrow fund for the benefit of the bondholders. The district court denied this petition, stating that such an order "would impermissibly interfere with the formulation and implementation of a plan or reorganization for the Debtor's estate."[5] On appeal, we reversed.

In our opinion in *In re Lehigh Valley R.R.*, we first stated the rule of *In re Penn Central Transp. Co.*, 474 F.2d 832 (3d Cir. 1973), and *Central Railroad of New Jersey v. Manufacturers Hanover Trust Co.*, 421

1. Pub.L. No. 93–236, 87 Stat. 986, *codified at* 45 U.S.C. § 701 *et seq.*

2. Congress delegated the task of preparing the Final System Plan to the United States Railway Association, a new government corporation created by § 201(a) of the Act, 45 U.S.C. § 711(a). Congress intended such a plan to create "a financially self-sustaining rail and express service system in the region." 45 U.S.C. § 716(a)(1).

3. The Plan provided for the transfer of properties to Conrail in exchange for: (1) securities of Conrail; (2) $500 million of United States Railway Association obligations guaranteed by the

United States Government; and (3) "the other benefits accruing to such railroad by reason of such transfer." 45 U.S.C. § 716(d)(1).

4. As part of our decision in *In re Lehigh Valley R.R.*, 558 F.2d 137, 146 (3d Cir. 1977), we held that "reorganization courts do retain their jurisdiction under § 77 to reorganize or liquidate the debtor railroads after they have transferred their rail properties to Conrail pursuant to the Final System Plan."

5. This order, written without an accompanying opinion, is not reported.

F.2d 604 (3d Cir.), *cert. denied,* 398 U.S. 949, 90 S.Ct. 1867, 26 L.Ed.2d 289 (1970), that if certain conditions are satisfied, a debtor's trustee may use income generated by mortgaged property. 558 F.2d at 147–48.[6] However, we found no legal justification for differentiating between proceeds from the sale of mortgaged property and income from the rental of such property. Moreover, since Lehigh Valley is no longer operating a railroad, we concluded that the public has no interest in these reorganization proceedings. Accordingly, the factors in the *Central Railroad* test dealing with the successful rehabilitation of the railroad are irrelevant. The only purpose of these § 77 proceedings is "to protect the rights of the creditors." *Id.* at 149. But, as our holding recognized, the bondholders whose interests are secured by the Claremont Terminal Property must be given special protection. Before income from that property can be used to finance the expenses of administering the estate, we held, the district court must find, first, that such funds are necessary and cannot be obtained elsewhere and, second, that the bondholders' interests will be benefited, or at least not prejudiced, by the use of the rental income. Because the district court had not made the requisite findings, we vacated its order and remanded the petition to that court "for a threshold determination of these factors and further proceedings consistent with this opinion." *Id.* at 150.

Four months after we had remanded Citibank's petition, the district court had not acted to make the threshold determinations required by our remand. Accordingly, Citibank filed with the district court a Notice of Renewal of Petition and a Petition for Scheduling Order. On November 21, 1977, without holding a hearing, the district court denied Citibank's original petition to sequester the rents from the mortgaged property. Contending that the district court had failed to comply with our order in *In re Lehigh Valley R.R.,* Citibank filed the instant petition on December 21, 1977, to compel the district court to comply with that order.

## II.

■ The remedy of mandamus is a drastic one and should be invoked only under extraordinary circumstances. *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 382–85, 74 S.Ct. 145, 98 L.Ed. 106 (1953); *Ex parte Fahey,* 332 U.S. 258, 259, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947). As the Supreme Court stated in *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967), "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." The reasons for this judicial reluctance to grant writs of mandamus are twofold. First, a mandamus action has the undesirable consequence of making a district court judge a litigant. *Kerr v. United States District Court,* 426 U.S. at 402, 96 S.Ct. 2119. More importantly, granting writs of mandamus in less than extraordinary situations would foster piecemeal litigation and thus would frustrate Congress' preference for appellate review only over final judgments. *Id.* at 403, 96 S.Ct. 2119.

■ Despite federal appellate courts' general reluctance to grant writs of mandamus, they have uniformly granted such writs in one situation—where the district court has failed to adhere to an order of the

---

**6.** The standard for determining whether the trustee can use income from mortgaged property was stated in *Central Railroad*:

The rule for a reorganization under Sec. 77 * * * is that in addition to finding that the funds are presently needed and cannot be obtained elsewhere the court need only conclude that reorganization is probably feasible, that the money drawn-down and expended for additions and betterments will materi-

ally contribute to the possibility of successful reorganization and to the continuation of the transportation plant, or a substantial part thereof, as a going concern, and that the interests of the bondholders are not thereby prejudiced.

421 F.2d at 606, *quoting In re New York, New Haven & Hartford R.R.,* No. 30226 (D.Conn., Dec. 7, 1961).

court of appeals. The Supreme Court has repeatedly held that an appellate court has jurisdiction under 28 U.S.C. § 1651 to issue a writ of mandamus to compel an inferior court to comply with an earlier mandate. *General Atomic Co. v. Felter,* —— U.S. ——, 98 S.Ct. 1939, 56 L.Ed.2d 480 (1978); *United States v. United States District Court,* 334 U.S. 258, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948); *Delaware L. & W.R.R. v. Rellstab,* 276 U.S. 1, 48 S.Ct. 203, 72 L.Ed. 439 (1928); *In re Potts,* 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994 (1897). The authority to grant extraordinary writs in such situations follows directly from the language of § 1651, which permits appellate courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions . . . ." As the Supreme Court has stated on several occasions, the writ of mandamus "has traditionally been used in the federal courts '. . . to compel [an inferior court] to exercise its authority when it is its duty to do so.'" *Kerr v. United States District Court,* 426 U.S. at 402, 96 S.Ct. at 2123; *Will v. United States,* 389 U.S. at 95, 88 S.Ct. 269; *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). A federal district court has a clear duty to comply with an order decreed by a panel of this circuit. Where the district court has failed to comply with such an order, we have authority under § 1651 to issue a writ of mandamus to compel the district court to follow our previous order. Any other rule would severely jeopardize the supervisory role of the courts of appeals within the federal judicial system.

### III.

Our task, then, is to determine whether the district court has complied with our order in *In re Lehigh Valley R.R.* which directed the court, before it could permit the continued use of rental income from the mortgaged property, to make two threshold determinations. In his order denying Citibank's renewed petition, Judge Fullam addressed the first condition of our order as follows:

> . . . No one has suggested a feasible way of terminating the ongoing expenses of administration, either in pursuit of an acceptable Plan of Reorganization, or in furtherance of some other form of orderly disposition of available assets. No one has suggested, or seriously could suggest, that litigation of the Valuation case should be abandoned. In short, the first condition mentioned by the Court of Appeals (need for the money) is amply satisfied.
>
> It is also clear that the Debtor has no unencumbered income, or other unencumbered assets, which might be looked to as a source of payment of these ongoing expenses.

District Court's Memorandum [Exhibit E], at 3. Although we are troubled both by the district court's delay in acting upon our order and by its somewhat limited findings, we are satisfied that Judge Fullam made the first of the two determinations and thus that he complied with that part of our earlier order.

■ We reach the opposite conclusion, however, as to the second required condition—i. e., that the bondholders not be prejudiced by the continued use of the rental income from the Claremont Terminal Property to finance the expenses of administering the debtor's estate. In reaching that conclusion, we rely primarily on the very language used by Judge Fullam to justify his denial of the requested relief:

> In short, although *it is not possible to make a finding that the security of petitioner's mortgage is not affected by the Trustee's use of the Claremont Terminal rentals to meet current expenses of administration,* I am satisfied that any such temporary impairment can be rectified in connection with the Plan proceedings.

District Court's Memorandum, at 4 (emphasis added). In the italicized language above, Judge Fullam in effect admitted his failure to comply with the second half of our order. Judge Fullam's complete discussion of the second condition is quoted in the

margin.[7] As the excerpted discussion indicates, Judge Fullam predicated his denial of Citibank's renewed petition on his view that any prejudice to the bondholders could only be determined after the reorganization plan had been approved or disapproved. Only at that time, he stated, could the expenses be allocated and any injury to the bondholders be assessed. But such reasoning flies directly in the face of our holding in *In re Lehigh Valley R.R.* We held there that the bondholders' interests must not be eroded pending reorganization and that the district court must determine the likelihood of any prejudice to their interests *before* allowing the debtor's trustee to use the money generated by the mortgaged property. By delaying the determination of prejudice until after the reorganization plan had been examined, the district court failed to comply with our order.

■ Our conclusion is buttressed by two further considerations. First, Judge Fullam did not act upon our order for four months and indeed might never have acted if Citibank had not renewed its petition to sequester the rents. We agree with Citibank that it had no obligation to file a second petition with the district court. The court was obliged to act on our order on its own initiative. Secondly, we fail to see how Judge Fullam could make the requisite determination without convening a hearing at which both Citibank and the debtor's trustee would be able to submit evidence and present oral argument. The only reasonable interpretation of our decision in *In re Lehigh Valley R.R.* is that some sort of hearing is required before the district court can make the threshold determination.

## IV.

Despite the district court's failure to comply with our earlier order, the debtor's trustee contends that we should not issue a writ of mandamus since Citibank could have appealed from the order denying its petition for sequestration. A petition for a writ of mandamus, argues the trustee, cannot substitute for appeal. *See Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). For two reasons, we find the trustee's argument unpersuasive.

■ First, we disagree that Citibank could have immediately appealed from the district court's order below. Normally, this court has jurisdiction to hear appeals only from final orders. *See* 28 U.S.C. § 1291; *Bachowski v. Usery,* 545 F.2d 363, 368–69 (3d Cir. 1976). Section 24(a) of the Bankruptcy Act, 11 U.S.C. § 47(a), provides for a

7. The present petition is an inadequate vehicle for achieving the proper allocation of administration expenses. A fair and equitable allocation of these expenses must, of course, be made, either in a Plan of Reorganization, or in a liquidation process. Principles of marshalling must be applied in either context.

Therefore, I have no difficulty in concluding that denial of the sequestration petition would not adversely affect the rights represented by Citibank as Indenture Trustee. Those rights can be fully vindicated in the Plan proceedings. There is a surface appeal to the argument that, if the rentals were to be escrowed, and if the Indenture Trustee could establish that the Lehigh Valley Trustee has no equity in the property, and therefore that the property should be disclaimed to the Indenture Trustee, the escrowed rents, as well as the real estate, would then be turned over to the Trustee toward the satisfaction of the mortgage. The same analysis could be made with respect to many other assets of the Debtor. But the overall issue is not whether the security of a particular creditor has been eroded by reason of the mandated continuation of loss rail operations, and the implementation of the RRRA, but how best to allocate those adverse consequences among all of the interests affected. As things now stand, no secured pre-bankruptcy creditor can realistically expect to be able to liquidate the security and walk away with the cash. Accrued unpaid administration expenses, principally consisting of the Government's § 211(h) claims and the claims of state and local taxing entities, must be dealt with. By the same token, all creditors, not just those looking to conveyed rail assets for security, have a stake in the Valuation Case, where erosion issues will be decided.

In short, although it is not possible to make a finding that the security of petitioner's mortgage is not affected by the Trustee's use of the Claremont Terminal rentals to meet current expenses of administration, I am satisfied that any such temporary impairment can be rectified in connection with the Plan proceedings.

District Court's Memorandum, at 3–4.

limited exception to that normal rule. That section permits interlocutory appeals from "proceedings in bankruptcy," but not from "controversies arising in proceedings in bankruptcy." As we recently observed in *In re Penn Central Transp. Co.*, 570 F.2d 1189 (3d Cir. 1978), "[t]he differentiation between 'controversies arising in proceedings in bankruptcy' and 'proceedings in bankruptcy' is hardly pellucid." 570 F.2d at 1193. In *In re Penn Central Transp. Co.*, we adopted the test enunciated by the Fifth Circuit in *In re Durensky*, 519 F.2d 1024, 1027 (5th Cir. 1975):

> As a general rule, "proceedings" are those matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate. "Controversies", on the other hand, are usually described as matters which arise in the course of the bankruptcy proceedings which are not mere steps in the ordinary administration of the bankrupt, but which present distinct and separable issues between the trustees and adverse claimants concerning the right and title to the bankrupt's estate.

570 F.2d at 1193.

■ Citibank's petition to sequester the rents from the mortgaged property is an adverse claim on the estate's assets. As an adverse claim, it does not relate to the administration of the estate, but instead " 'raises a dispute with regard to the propriety of including property in the estate for distribution.' " *In re Penn Central Transp. Co.*, 570 F.2d at 1194, *quoting Kingdom Mut. S.S. Assurance Ass'n v. Liman*, 418 F.2d 9, 10 (2d Cir. 1969). Such a claim falls within the category of a controversy arising in proceedings in bankruptcy and thus is not immediately appealable. *In re Penn Central Transp. Co.*, 570 F.2d at 1194.

■ Nor is the district court's order appealable as a collateral order under the doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1940). In *Cohen*, the Supreme Court allowed an interlocutory appeal from an order which, in effect, finally disposed of a claimed right that was separable from the main cause of action. *Id.* at 546–47, 69 S.Ct. 1221. We need not decide whether Judge Fullam's order was separable from the primary dispute, for we conclude that his order was not even a "disposition" within the *Cohen* rule. Judge Fullam's order merely stayed the determination of the prejudicial impact on the bondholders until after the reorganization plan had been approved or disapproved. In a different context we have held that a stay of a proceeding is not immediately appealable. *See Frederick L. v. Thomas*, 578 F.2d 513 (3d Cir. 1978).[8]

■ Second, even assuming that Citibank could have appealed from the district court's order, we think that the remedy of mandamus is still appropriate. As the Supreme Court explained in *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), the primary reason underlying the reluctance to issue writs of mandamus is the desire to avoid piecemeal litigation. But where the order is immediately appealable, that policy is not implicated. Since Citibank's petition for a writ of mandamus was filed within the applicable period for filing a notice of appeal, the debtor's trustee was not prejudiced by Citibank's labelling its petition as one for a writ of mandamus and not for appellate review. More fundamentally, we do not think that Citibank could have obtained adequate relief if it had merely filed an appeal from Judge Fullam's order. In *In re Lehigh Valley R.R.*, we heard an appeal from the district court's initial order

---

8. The debtor's trustee claims that since we heard an interlocutory appeal in *In re Lehigh Valley R.R.*, the order being examined here must also be appealable. We disagree. First, the question of appealability was never even considered in *In re Lehigh Valley R.R.* More importantly, the order reviewed there did dis-

pose of Citibank's claim. Unlike the present order, it did not merely postpone the determination of prejudice until after the reorganization plan had been devised and evaluated. Instead, it finally and unequivocally denied Citibank's petition.

denying Citibank's petition to sequester the rental monies. We reversed that order, holding that before the debtor's trustee could use those monies, the district court had to make two findings. If we had heard Citibank's present contention on appeal, we could only repeat what we had said in *In re Lehigh Valley R.R.* But pursuant to 28 U.S.C. § 1651 we can do more. We can find that Judge Fullam has not complied with our previous order, and we can, by issuing a writ of mandamus, order him to comply. Regardless of the availability of appeal, we think that the writ of mandamus is the proper remedy to compel the district court to comply with our earlier order. *See, e. g., United States v. United States District Court,* 334 U.S. 258, 68 S.Ct. 1035 (1948). As the Supreme Court stated very recently in *General Atomic Co. v. Felter,* —— U.S. ——, ——, 98 S.Ct. 1939, 1941, 56 L.Ed.2d 480 (1978), "[a] litigant who . . . has obtained judgment in this Court after a lengthy process of litigation . . . should not be required to go through that entire process again to obtain execution of the judgment of this Court."

## V.

The debtor's trustee further contends that the bondholders' interests can be adequately protected at the eventual hearings on the proposed reorganization plan. Since the issuance of a writ of mandamus would interfere with the progress of the reorganization proceedings, he argues that this court should, in its discretion, decline to issue such a writ.

■■ The decision to issue a writ of mandamus is largely committed to the discretion of the issuing court. *See Kerr v. United States District Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Schlagenhauf v. Holder,* 379 U.S. 104, 112 n.8, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Parr v. United States,* 351 U.S. 513, 520, 76 S.Ct. 912, 100 L.Ed. 1377 (1956). Thus, a court can decide not to issue the writ even though such a writ, if granted, would be proper. However, in this case we do not think that refusing to issue a writ of man-

damus would be a proper exercise of our discretion. To be sure, a writ of mandamus might interfere slightly with the timetable established in the reorganization proceedings. But we anticipated such interference when we made our decision in *In re Lehigh Valley R.R.* We cannot question that decision here; we can only ensure that its order is followed. Moreover, we are not at all sure that the hearings on the reorganization plan will adequately protect the interests of the bondholders. As we stressed in our opinion in *In re Lehigh Valley R.R.,* since Lehigh Valley no longer operates a railroad, the sole purpose of reorganization is to protect the creditors. Citibank, as indenture trustee, represents secured creditors whose security is, at least potentially, being eroded during the course of the reorganization proceedings. The bondholders' interests must be protected during those proceedings.

■ Nor do we think that the need to pay government tax claims justifies denying the relief sought here. If on remand Judge Fullam finds that the bondholders will not be prejudiced by the trustee's use of the Claremont Terminal rents, the trustee can use those monies. If, on the other hand, Judge Fullam finds that the bondholders might be prejudiced by such use, he should direct that the rental monies be placed in an escrow account for the benefit of the bondholders. But if at the end of the reorganization proceedings Judge Fullam concludes that the secured property should bear some of the burden of the government tax claims, he can, at that time, order that a reasonably proportionate share be paid from the escrow account.

## VI.

For the reasons discussed above, we grant the petition for a writ of mandamus. We direct the district court to hold a prompt hearing to determine whether the bondholders will be adversely affected by the continued use of the rent from the mortgaged property to finance the expenses of administering the debtor's estate.