PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2436
No. 07-2678

SBRMCOA, LLC, Individually and on behalf
of its members,

Appellant/Cross-Appellee

v.

BAYSIDE RESORT, INC., a corporation; TSG
TECHNOLOGIES, INC., a corporation; TSG CAPITAL,
INC., a corporation; BEACHSIDE ASSOCIATES, LLC

Appellees/Cross-Appellants

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 06-cv-00042)
District Judge:  Honorable Curtis V. Gomez

Argued December 6, 2012
Before:  SMITH, HARDIMAN and ROTH, *Circuit Judges*.

(Filed: February 11, 2013)

James M. Derr [ARGUED]
P.O. Box 664
Charlotte Amalie, St. Thomas
USVI, 00804-0000
USVI
  *Attorneys for Appellant/Cross-Appellee*

Neil D. Goldman [ARGUED]
Goldman & Van Beek
510 King Street
Suite 416
Alexandria, VA 22314-0000

Gregory H. Hodges
Dudley, Topper & Feuerzeig
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI 00804
  *Attorneys for Appellee/Cross-Appellants*

OPINION OF THE COURT

HARDIMAN, *Circuit Judge*.

This appeal arises out of a dispute at the Sapphire Beach Resort and Marina on the island of St. Thomas. The case pits a condominium association against its initial sponsor and some of the sponsor's creditors. The District Court for

2

the Virgin Islands ordered the parties to arbitrate their dispute. For the reasons that follow, we will affirm in part, vacate in part, and remand.

I

The Sapphire Beach Resort and Marina Condominium Association, LLC (Condominium Association) was initially sponsored by Bayside Resort, Inc. in 1998. The declaration of condominium (Declaration) required Bayside to provide fresh water and wastewater treatment services to the Condominium Association at a reasonable rate to be determined by several factors. The Declaration also made all of the water facilities common property of the Condominium Association.

In 1999, Bayside contracted with TSG Technologies, Inc. and TSG Capital, Inc. (collectively, TSG) to construct, operate, and maintain a water treatment system to fulfill its obligation under the Declaration to provide potable water to the members of the Condominium Association. From the contract's inception until 2005, TSG charged Bayside approximately $0.02 per gallon of potable water.

By 2001, Bayside became delinquent in its obligations to creditors. The financial situation worsened and, by early summer of 2005, Bayside owed millions of dollars to various creditors including TSG, the Condominium Association, and its members. In addition to the aforementioned unsecured creditors, Bayside owed more than $9 million to Beachside Associates, LLC, which held a mortgage on some of Bayside's property and had already filed a foreclosure action.

3

In the summer of 2005, Bayside, TSG, and Beachside reached an agreement pursuant to which Bayside assigned to TSG its exclusive right under the Declaration to supply water to the Condominium Association. The agreement permitted TSG to increase the price of water from $0.02 per gallon to $0.05 per gallon, which would generate a windfall that TSG could use to pay down the debt of Bayside before paying any remainder to Bayside's secured lender, Beachside. Under this plan, TSG could be paid ahead of Bayside's secured creditors while Beachside could recover some of its debt as well.

Before the agreement could be implemented, however, the Condominium Association had to consent to Bayside's assignment of its water provision rights to TSG. To obtain that consent, Bayside and TSG threatened to cease providing water and wastewater treatment services to the Condominium Association's members even though it was not feasible for them to obtain those services elsewhere.

Yielding to those threats, the Condominium Association's Board signed a water supply agreement (Water Supply Agreement) and consented to the assignment of the water provision rights to TSG. The Water Supply Agreement not only required the Condominium Association to pay $0.05 per gallon of water, but also provided that Bayside, rather than the Condominium Association, owned all of the water facilities except for a water plant. The Water Supply Agreement also contained an arbitration clause.

After 2005, TSG continued to threaten to shut off the Condominium Association's water unless it paid $0.05 per gallon. In January 2006, after not receiving the payment mandated by the Water Supply Agreement, TSG temporarily

stopped producing potable water for the Condominium Association.

In March 2006, the Condominium Association filed suit in the District Court of the Virgin Islands against Bayside, TSG, and Beachside, asserting five claims. Count One alleged that Defendants committed criminal extortion in violation of the Racketeer Influenced Corrupt Organizations Act (RICO). Count Two alleged that Bayside and TSG breached their obligations under the Declaration. In support of this claim, the Condominium Association claimed the 2005 Water Supply Agreement was void both because it was coerced and because its Board lacked the authority to sign it. (Count Four sought a declaratory judgment voiding the Water Supply Agreement on the same grounds).[1] In Count Three, the Condominium Association sought a declaratory judgment that it owned the water treatment systems and associated facilities. Finally, in Count Five, the Condominium Association sought specific performance of the Declaration, *i.e.*, an order compelling Bayside to convey its water system to the Condominium Association.

In April 2006, all three Defendants filed separate motions to dismiss, claiming, *inter alia*, that the case had to be arbitrated pursuant to the arbitration clause of the Water Supply Agreement. Finding all five counts of the complaint within the scope of the arbitration clause, the District Court

---

[1] To maintain consistency with the District Court's opinion and the parties' submissions, we will refer to the Condominium Association's argument that the Board lacked the authority to enter into the Water Supply Agreement as the *ultra vires* argument.

granted Defendants' motions, dismissed the complaint, and entered an order compelling arbitration. In addition, the District Court rejected the Condominium Association's *ultra vires* argument on the merits with respect to Count Two, but referred both Count Two as a whole, and the Condominium Association's same *ultra vires* argument with respect to Count Four, to arbitration. The Condominium Association appealed.[2]

## II

The District Court had subject matter jurisdiction over the RICO claims under 28 U.S.C. § 1331 and 48 U.S.C. § 1612(a) and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) and 48 U.S.C. § 1612(a). We have jurisdiction over the appeal under 28 U.S.C. § 1291, even though the District Court's order compelled arbitration. *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45–46 (3d Cir. 1991).

We review the District Court's order de novo. *See Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009). We review any factual findings the District Court made in interpreting the relevant contract for clear error. *See State*

---

[2] Bayside and Beachside also filed a cross-appeal, No. 07-2678. However, on August 17, 2012, their counsel advised that he would move to dismiss the cross-appeal for mootness although no such motion was filed. In any event, Bayside and Beachside abandoned their cross-appeal by not addressing it in their opening brief. *See Free Speech Coal., Inc. v. Att'y Gen.*, 677 F.3d 519, 545 (3d Cir. 2012). Therefore, we will dismiss the cross-appeal. *See Seufert Bros. Co. v. United States*, 249 U.S. 194, 198 (1919).

*Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir. 2000). The District Court's order compelling arbitration is treated as a summary judgment, so the "party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff*, 587 F.3d at 620 (internal quotation marks omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).

## III

The Condominium Association's *ultra vires* argument is not arbitrable and must be decided by the District Court. Under the *Prima Paint* rule, if a contract contains an arbitration clause, challenges to the validity of the contract as a whole are for the arbitrator to decide. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). But challenges to the *formation* of a contract are "generally for courts to decide." *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855–56 (2010); *see also Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing between challenges to a contract's validity and challenges to its formation).

We have held that a challenge to a contract on the grounds that the signatory was unauthorized to sign it must be decided by a court, even if the contract contains an arbitration clause, because it is a challenge to a contract's formation rather than its validity. *Sandvik AB v. Advent Int'l Corp.*, 220

7

F.3d 99, 100–01 (3d Cir. 2000).[3]  *Sandvik* teaches that the court must adjudicate any claim that a contract was beyond a signatory's authority or *ultra vires*, even if that contract contains an arbitration clause.  Therefore, we will vacate the District Court's order compelling arbitration so it can first decide the *ultra vires* argument on the merits.

A

The District Court rejected the Condominium Association's *ultra vires* argument with respect to Count Two based on the fact that the Board approved the Water Supply Agreement.  In doing so, the District Court erred by conflating the authority of the Condominium Association itself with the more limited authority of its Board.  Under the Condominium Association's by-laws, the Board "shall have the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except those which by law or by the Declaration or by

---

[3] Our approach is consistent with five of the six other courts of appeals to have addressed this issue.  *See Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 989–90 (11th Cir. 2012); *Telenor Mobile Commc'ns. AS v. Storm LLC*, 584 F.3d 396, 406 n.5 (2d Cir. 2009); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429–30 (5th Cir. 2004); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 589–90 (7th Cir. 2001); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140 (9th Cir. 1991); *but see Bd. of Cnty. Comm'rs of Lawrence Cnty. v. L. Robert Kimball & Assocs.*, 860 F.2d 683, 685 (6th Cir. 1988) (arbitrators can decide *ultra vires* challenge); *cf. Koch v. Compucredit Corp.*, 543 F.3d 460, 464 (8th Cir. 2008) (court can decide challenge to whether a contract was assigned).

these By-Laws may not be delegated to the Board of Directors."

One of the Declaration's limitations is that it "may be amended by the vote of at least 67% in common interest of all Unit Owners, cast in person or by proxy at a meeting duly held in accordance with the provisions of the By-Laws." This straightforward provision requires a 67% vote before the Declaration may be amended and Appellees do not argue that the Board even sought, much less obtained, the requisite vote. Whether such a vote was necessary turns on whether the Water Supply Agreement constituted an amendment to the Declaration.

The Condominium Association argues that the Water Supply Agreement amended the Declaration in two respects: (1) by changing the rates charged for water; and (2) by converting an individual expense into a common charge.

As for the first argument, the Declaration requires Bayside to set a "reasonable" rate for water considering "among other things, its cost of . . . the equipment necessary." According to the complaint: "Bayside breached its obligations to [the Condominium Association] by refusing to continue to provide water treatment and wastewater treatment services at rates determined in accordance with the Declaration"; the Water Supply Agreement resulted in TSG charging "rates far in excess of historical rates"; TSG refused to provide water treatment in accordance with its obligations under the Declaration unless the Condominium Association paid "an arbitrarily set charge for said services"; and the fixed $0.05 rate was an unreasonable rate designed to extort funds from the Condominium Association in excess of what the Declaration allowed.

9

As for the second argument, the Declaration states that each member is individually responsible for paying water charges, but the Water Supply Agreement requires the Condominium Association to collect water charges from the members as a common charge.

The District Court did not address these arguments. Rather, it found that the Water Supply Agreement was not *ultra vires* because the Condominium Association was authorized to enter into the Agreement. In doing so, the District Court did not recognize that the authority of the Condominium Association's Board of Directors is narrower than the authority of the Condominium Association as a whole. *See, e.g.*, *Waggoner v. Laster*, 581 A.2d 1127, 1133–35 (Del. 1990) (finding a corporation's board of directors lacked the authority to issue stock with special voting rights because the certificate of incorporation did not grant them such authority, even though the corporation was authorized to do so). Therefore, we will remand so the District Court can determine whether the Board was, in fact and law, authorized to execute the Water Supply Agreement.

B

The Condominium Association also argues that the District Court should have allowed additional discovery on the *ultra vires* argument. In light of our decision to remand the case, we agree that additional discovery is warranted. The District Court granted Defendants' motion to dismiss in part by relying on the affidavit of Myron Poliner, a Board member of the Condominium Association. In doing so, the District Court converted the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Therefore, the District Court was required to "provide[] notice of its

intention to convert the motion and allow[] an opportunity to submit materials admissible in a summary judgment proceeding." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 284 (3d Cir. 1991) (citation omitted). Of course, if no prejudice accrued from the District Court's failure to do so, it would be harmless error. *Id.* at 285.

Because the District Court conflated the authority of the Board with the authority of the Condominium Association, it is unclear whether it concluded that Poliner had the authority to sign the Water Supply Agreement on behalf of the Condominium Association as a whole, or merely on behalf of the Board. Regardless of how we read the District Court's opinion, the Condominium Association is entitled to conduct additional discovery and submit materials on the question of whether the Water Supply Agreement was beyond the authority of the Board.

If the District Court relied on Poliner's affidavit to conclude that he had the authority to sign the Water Supply Agreement on behalf of the Condominium Association as a whole, then it committed reversible error because that issue is the crux of this entire case. Therefore, the Condominium Association is entitled to "an opportunity to submit materials admissible in a summary judgment proceeding." *See Ford Motor Co.*, 930 F.2d at 284–85; Fed. R. Civ. P. 12(d).

If, on the other hand, the District Court concluded merely that Poliner was authorized to sign the Water Supply Agreement on behalf of the Board, its error would be harmless because the Condominium Association's own complaint acknowledges as much. Of course, as we have explained, such a conclusion begs the question as to whether the Board was authorized to sign the Water Supply

Agreement on behalf of the Condominium Association as a whole. Additional discovery would still be required on that question, which is the dispositive issue in this case.[4]

## IV

We next address the District Court's finding that the Condominium Association's coercion claim was arbitrable.[5]

---

[4] Appellees raise two procedural challenges to the Condominium Association's discovery request. First, they argue that the Condominium Association waived its discovery request because it did not request discovery with respect to the arbitration clause specifically. We disagree because the Condominium Association made the request "to adequately refute the claims asserted by Beachside Associates, LLC in its motion to dismiss," which contained a request for arbitration. Second, Appellees argue that the Condominium Association is estopped from seeking discovery because it asserted below that arbitrability is a legal question. Appellees' argument misreads the Condominium Association's argument below, which was that the Condominium Association was entitled to have the arbitrability issue decided by the District Court before the case could be sent to arbitration, not that the Condominium Association was entitled to have the arbitrability issue decided without reference to facts. Therefore, the Condominium Association is not estopped from seeking discovery.

[5] Appellees argue that the Condominium Association waived its coercion argument. We disagree because the Condominium Association alleged coercion in its complaint. The District Court understood that the Condominium Association raised a coercion argument, and addressed it.

Although we have never squarely addressed whether coercion claims are arbitrable, we drew a distinction in *Sandvik* between claims that a contract is void, which are not arbitrable, and claims that a contract is voidable, which are arbitrable. *See* 220 F.3d at 106–07. Because coercion renders a contract voidable rather than void, *see* Restatement (Second) of Contracts § 7, cmt. b., *Sandvik* suggests that the Condominium Association's coercion claim is arbitrable.

The question is not so straightforward, however, because it is unclear whether the void/voidable distinction we noted in *Sandvik* survived the Supreme Court's subsequent decision in *Buckeye Check Cashing*. There, the Supreme Court rejected the notion that the application of the *Prima Paint* rule depends on state law distinctions between void and voidable contracts. 546 U.S. at 446. Rather, the relevant distinction is between challenges to a contract's validity, which are arbitrable, and challenges to a contract's formation, which generally are not. *Id.* at 444 n.1; *see also Granite Rock*, 130 S. Ct. 2847, 2855–56. Indeed, *Buckeye Check Cashing* itself held that a challenge to a contract's legality was arbitrable, even though illegality would have rendered that contract void rather than voidable. 546 U.S. at 442, 449. On the other hand, *Buckeye Check Cashing* left open the question whether mental capacity challenges to a contract are arbitrable, 546 U.S. at 444 n.1 (citing *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003) (finding that an Alzheimer's patient's mental capacity challenge could be decided by a

Therefore, the argument was not waived. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue *not passed upon below*." (emphasis added)).

13

court)), even though mental capacity challenges render contracts voidable rather than void. *See Weird by Gasper v. Estate of Ciao*, 556 A.2d 819, 824 (Pa. 1989); *see also* Restatement (Second) of Contracts § 7, cmt. b (challenge based on infancy).

Even under the *Buckeye Check Cashing* formulation, however, the Condominium Association's coercion claim is arbitrable because it is a challenge to the validity (rather than the formation) of the Water Supply Agreement. The Condominium Association's coercion claim is that TSG threatened to stop providing it with a service unless it consented to the assignment and agreed to pay a higher price. Although such economic duress implies that the Condominium Association's Board was bargaining from a position of weakness when it signed the Water Supply Agreement, it does not mean that the Condominium Association's capacity to consent was so diminished that no contract was ever formed or that the Condominium Association was necessarily unable to consent to the arbitration clause. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011) (upholding arbitration clauses in consumer contracts of adhesion). Therefore, we hold that the Condominium Association's coercion challenge is arbitrable.[6] This holding accords with both of the federal appellate courts to have squarely considered the issue. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) ("[F]raud in the inducement and economic duress of the 1995 Agreement

---

[6] However, if the District Court on remand finds that the Board lacked the authority to enter into the Water Supply Agreement in the first place, any disagreement about whether the Water Supply Agreement was coerced would be moot.

14

as a whole . . . are questions for the arbitrator."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981) (plaintiff's claim that "she was distracted and coerced by the high pressure sales talk of the Merrill Lynch representatives," *id.* at 394 n.2, was arbitrable).

V

Finally, to assist the District Court on remand, we address the Condominium Association's argument that there is an inconsistency between the Consent to Assignment, which referenced a "Water Supply Agreement between . . . Bayside and the COA dated August ____, 2005" and the Water Supply Agreement attached to Bayside's motion, which was "dated June ____, 2005." We agree with Appellees that the Condominium Association is judicially estopped from pursuing this argument. In a prior proceeding before the Virgin Islands Superior Court, the Condominium Association attached the same Water Supply Agreement dated June 2005 to its complaint in which it averred that "two agreements [were] signed in August 2005 . . . COA Water Supply Agreement . . . dated 'June __, 2005' *[sic]*" (emphasis added). Having alleged in another legal proceeding that the June 2005 date on the Water Supply Agreement was merely a typographical error, the Condominium Association is estopped from arguing otherwise in this case. *See Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012).

\*          \*          \*

The Condominium Association has raised a bona fide question as to whether its Board possessed the authority to enter into the Water Supply Agreement. Because this

15

question goes to the formation of the contract rather than its validity, it requires a judicial determination. Accordingly, we will vacate the order of the District Court and remand for additional discovery regarding that question. Also, for the reasons stated, we will affirm the District Court's holding that the Condominium Association's coercion claims are arbitrable.