NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1054
_____

SBRMCOA, LLC, Individually and on
behalf of its members,
                              Appellant

v.

BAYSIDE RESORT, INC A CORPORATION;
TSG TECHNOLOGIES, INC A CORPORATION;
TSG CAPITAL, INC A CORPORATION;
BEACHSIDE ASSOCIATES LLC
_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 3-06-cv-00042)
District Judge:  Hon. Curtis V. Gomez
_____

Submitted Under Third Circuit L.A.R 34.1(a)
December 11, 2014

Before:  CHAGARES, JORDAN and SHWARTZ, *Circuit Judges*.

(Filed: December 16, 2014)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

We are presented with the second appeal of Sapphire Beach Resort and Marina Condominium Association, LLC (the "Condominium Association" or "Association") from an order of the District Court of the Virgin Islands referring this Racketeering Influenced Corrupt Organizations Act ("RICO") suit to arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"). Though we lack jurisdiction to consider the appeal, we can consider the Condominium Association's alternative request for a writ of mandamus, and we conclude that the District Court's failure to comply fully with our mandate in *SBRMCOA, LLC v. Bayside Resort, Inc.* ("*SBRMCOA I*"), 707 F.3d 267 (3d Cir. 2013), warrants issuance of the writ.

## I.    Background

This case involves a longtime dispute over the provision of freshwater to the Condominium Association. In 2006, the Association filed suit against three entities that are now Appellees: the Association's sponsor, Bayside Resort ("Bayside");[1] the company that holds most of Bayside's debts, Beachside Associates ("Beachside"); and the companies hired to construct a water treatment facility for the Condominium Association, TSG Technologies, Inc. and TSG Capital, Inc. (collectively "TSG"). The Association alleges RICO violations and various claims under Virgin Islands common law.

Specifically, the Condominium Association alleges that Bayside was contractually obligated to provide to it both freshwater and service for wastewater at a reasonable rate.

---

[1] Generally, a sponsor is the entity – often the developer – that files the condominium offering plan and declaration of condominium. *E.g.*, *Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 677 (2d Cir. 2012).

In 1999, Bayside contracted with TSG to construct, operate, and maintain a water system to fulfill those obligations. In 2001, however, Bayside ran into financial difficulties and pursued an agreement with TSG and Beachside in which Bayside assigned to Beachside and TSG its rights to supply water to the Condominium Association. As part of the plan, the rate that the Association would pay for water was to increase by 150% per gallon. Appellees needed the Condominium Association's consent before they could implement this plan and, to secure it, they threatened to cease providing water services to the Condominium Association's members, who then would be unable to obtain water from any other source. Yielding to those threats, the Association's then-president signed a Water Supply Agreement and consented to the assignment of the water rights provisions.

The Condominium Association then filed the instant suit, asserting, among other things, that the Water Supply Agreement was void because the Association's Board of Directors was coerced into signing it and also lacked the authority to do so. Appellees moved to dismiss the complaint in favor of arbitration, relying on an arbitration clause in the Water Supply Agreement. The District Court entered an order dismissing the complaint and compelling arbitration. In the appeal that followed, we affirmed in part and reversed in part, holding that the District Court had not addressed a bona fide question as to whether the Board of Directors had the authority to enter into the Water Supply Agreement in the first place (*i.e.*, whether the Board of Directors' action was *ultra vires*). We noted a distinction between the authority of the Condominium Association and the more narrow authority of the Board of Directors. Thus, we vacated the District Court's arbitration order and remanded the matter with an instruction for the

3

Court to determine whether the Board of Directors was authorized to enter into the Water Supply Agreement. More specifically, we reasoned that if, as the Association urged, the Water Supply Agreement was an amendment of the Declaration of Condominium, it was invalid. We thus connected the validity of the Water Supply Agreement to the issue of whether it was an unauthorized amendment of the Declaration of Condominium.

On remand, the District Court allowed additional discovery and concluded that the Declaration of Condominium provided a "broad grant of authority" for the Board to manage the "affairs, policies, regulations and common property of the Condominium." (App. at 12-13.) The Court reasoned that, because "the provision of water" constituted an "affair" of the Condominium Association, the Board was authorized to execute the Water Supply Agreement. The Court did not make any findings as to whether the Water Supply Agreement constituted an amendment of the Declaration of Condominium. Without either dismissing or staying the case, the Court again referred the matter to arbitration, and the Condominium Association has again appealed. When the District Court learned of this appeal, it issued an order staying the case and directing the parties to notify it when the "matter before the ... Court of Appeals for the Third Circuit is concluded." (App. at 23-24.)

The parties have now fully briefed the issues, including whether we have jurisdiction to hear an appeal of the District Court's most recent order referring the matter to arbitration.

4

## II.  Discussion[2]

### A.  *Appellate Jurisdiction*

Under the Federal Arbitration Act ("FAA"), "[a]n appeal may be taken from . . . a final decision with respect to an arbitration."  9 U.S.C. § 16(a)(3).  Where a district court orders parties to resolve their dispute by arbitration and dismisses the case, the arbitration order is final and immediately appealable.  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86-89 (2000).  On the other hand, where a district court orders the parties to arbitration, but chooses to stay the proceedings, 9 U.S.C. § 16(b)(1), the FAA specifies that an immediate appeal is not available.  *Id.* at 87 n.2 ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable.").  Thus, there is a "possible anomaly of different jurisdictional results depending on whether a district court dismisses or stays a case." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002).

In the events leading to the present appeal, the District Court at first neither dismissed nor stayed the case, but rather ordered all claims to arbitration without

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331.  As a threshold matter, we must determine whether we have jurisdiction to hear this appeal. *See Elliot v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) ("Our jurisdictional inquiry must precede any discussion of the merits of the case for if a court lacks jurisdiction and opines on a case over which it has no authority, it goes beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." (internal quotation marks omitted)).  Both parties have indicated their consent to our appellate jurisdiction, but "it is well established that we have an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties' positions." *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 118 (3d Cir. 1999).  Our jurisdiction is thus addressed herein.

5

addressing the status of the case. Despite that, the Condominium Association says we have jurisdiction because the District Court's order amounted to a dismissal. But, we have not held that a case has been dismissed under the FAA absent express language from the district court to that effect.[3] In fact, we have held to the contrary. In *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 247 (3d Cir. 2013), we said that the district court did not dismiss the case and thus did not relinquish jurisdiction when it administratively closed the case but "never mentioned a dismissal – either with or without prejudice." *Id.* We concluded that "by closing the case – rather than dismissing it – the [district] court maintained an implicit supervisory role over the arbitration" and could have reopened the case at any time to resolve issues that arose during arbitration. *Id.* at 248.

Here, the District Court initially kept the case open and active on its docket, thus it retained even more immediate control over the case than the district court did in *Freeman*. In light of *Freeman*'s explicit rejection of the argument raised here in favor of

---

[3] *See, e.g.*, *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 268 (3d Cir. 2004) ("[A] district court's order compelling arbitration is usually an interlocutory order that cannot be appealed. In this case, however, the District Court both compelled the parties to arbitrate their dispute and also dismissed the matter with prejudice." (citations omitted)); *Blair*, 283 F.3d at 602 (holding that dismissal without prejudice was final under FAA because "[t]he *Green Tree* decision draws a distinction between dismissals and stays, but does not draw any distinctions within the universe of dismissals."); *cf. In re Pharmacy Benefits Managers Antitrust Litig.*, 700 F.3d 109, 115 (3d Cir. 2012) ("In an effort to circumvent the nonappealability of Judge Robreno's order [referring the case to arbitration and staying it during the pendency], Plaintiffs sought several times, and eventually obtained, an order lifting the stay and dismissing their complaint with prejudice.").

jurisdiction, we cannot say that the District Court's order constituted a dismissal, as the order never even suggested it was such. Furthermore, the Court later issued an order staying the case. While it is true that the subsequent order is not the relevant one for determining appellate jurisdiction and was not entered pursuant to the FAA, it persuasively shows that the District Court did not intend to dismiss the case. If it had so intended, it would have had no reason to issue a stay order. Under the circumstances, it seems clear that the District Court's order referring the case to arbitration was an unappelable interlocutory order under the FAA. Thus, we conclude that we lack appellate jurisdiction in this case.

B.     *Mandamus*[4]

We are not, however, without a means to require compliance with our mandate in *SBRMCOA I.* The Condominium Association has asked that we consider the appeal as a petition for a writ of mandamus under 28 U.S.C. § 1651, and we can do that. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1133 (3d Cir. 1990). One traditional function of the writ of mandamus is to confine a district court "'to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States*, 389 U.S. 90, 95 (1967) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). Although mandamus is an extraordinary remedy to be used sparingly, we have previously noted that it is "the

---

[4] We exercise plenary review over whether a district court properly proceeded in accordance with the mandate and law of the case as established on appeal. *Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 546 (3d Cir. 1999).

obvious remedy ... when a district court has failed to adhere to the mandate of an appellate court." *In re Chambers Dev. Co.*, 148 F.3d 214, 224 (3d Cir. 1998) (internal citations and quotation marks omitted); *see also Citibank, N.A. v. Fullam*, 580 F.2d 82, 86-87 (3d Cir. 1978) (appellate courts "have uniformly granted such writs ... where the district court has failed to adhere to an order of the court of appeals").

It is well established that a trial court "has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948) (collecting cases). Moreover, "[i]t is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012) (internal quotation marks omitted).

Here, while perhaps understandably perceiving its ruling as dealing with the question we identified in our opinion accompanying remand, the District Court did not comply fully with our mandate.[5] In *SBRMCOA I*, we highlighted the need for the District

---

[5] In *SBRMCOA I*, we repeatedly directed the District Court, on remand, to "determine whether the Board was, in fact and law, authorized to execute the Water Supply Agreement." 707 F.3d at 272. *See also id.* at 273 (instructing the district court to answer the "question as to whether the Board was authorized to sign the Water Supply Agreement"); *id.* at 275 (directing the district court to determine "whether [the] Board possessed the authority to enter into the Water Supply Agreement"). The District Court in fact did answer that question. Thus, the District Court's decision to answer the

8

Court to determine whether the Board's entry into the Water Supply Agreement constituted an amendment of the Declaration of Condominium and, thus, was *ultra vires*. We noted the possibility that the Water Supply Agreement could be an amendment of the Declaration, and we explained how an amendment would have properly been effectuated. *SBRMCOA I*, 707 F.3d at 272. The District Court instead focused on whether the Water Supply Agreement touched on an "affair" of the Condominium Association and thus was authorized.[6] It never mentioned the amendment issue we directed to its attention and which comprised the entirety of Appellant's briefing on remand.

Thus, the District Court failed to address a crucial question and its ruling on remand is at least incongruous with the "spirit" of our mandate. *Kennedy*, 682 F.3d at 253. We will therefore issue a writ of mandamus. *Citibank*, 580 F.2d at 86-87 ("Despite federal appellate courts' general reluctance to grant writs of mandamus, they have uniformly granted such writs in one situation where the district court has failed to adhere to an order of the court of appeals.").[7]

---

ultimate question, though not in the manner we directed, is perhaps an error of our own making.

[6] The District Court also noted that the Declaration of Condominium does not otherwise prohibit the Board from entering into contracts. This very brief analysis did not, however, address the question of whether the Declaration of Condominium had been amended.

[7] Our decision to return this to the District Court again should not be understood as implying any view on the questions presented.

9

**III. Conclusion**

For the forgoing reasons, we will dismiss the appeal for lack of jurisdiction but will grant the petition for a writ of mandamus and direct the District Court to vacate its order referring the parties to arbitration. We will also order the District Court to determine whether the Water Supply Agreement constituted an unauthorized amendment of the Declaration of Condominium and, based upon this determination, whether the Board was authorized in law and fact to enter into the Water Supply Agreement.