NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3546
_____

In re: SBRMCOA, LLC,
                                        Petitioner

On a Petition for Writ of Mandamus from the
District Court of the Virgin Islands
(Related to D.C. Civ. Action No. 3-06-cv-00042)
District Judge: Honorable Curtis V. Gómez

Argued May 4, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges*.

(Opinion Filed:  September 12, 2017)
_____

OPINION*
_____

Maria T. Hodge, Esq. [*ARGUED*]
Hodge & Hodge
1340 Taarneberg
St. Thomas, VI 00802
        *Counsel for Petitioner*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Neil D. Goldman, Esq. [*ARGUED*]
Goldman & Van Beek
510 King Street
Suite 416
Alexandria, VA 22314

*Counsel for Respondents*

GREENAWAY, JR., *Circuit Judge*.

Before us for the third time is the case between Plaintiff-Petitioner Sapphire Beach Resort and Marina Condominium Association, LLC (the "Association") and Defendants-Respondents Bayside Resort, Inc. ("Bayside"); Beachside Associates, LLC ("Beachside"); and TSG Technologies, Inc., and TSG Capital, Inc. (collectively, "TSG"). On this appeal, the Association asks us to grant another writ of mandamus compelling the District Court to follow the mandate that we issued in *SBRMCOA, LLC v. Bayside Resort, Inc.* (*SBRMCOA II*), 596 F. App'x 83 (3d Cir. 2014). We conclude that the District Court adhered to the letter and spirit of our mandate. We will deny the petition.

## I.      Facts & Procedural Background

The Association's Declaration of Condominium (the "Declaration") stated that Bayside, the Association's sponsor, would provide water and wastewater treatment services to each condominium unit ("Unit Owners"). As Bayside ran into financial difficulties, it pursued an agreement with TSG and Beachside (the "Water Supply Agreement" or "Agreement"). The Agreement addressed the supply of water to the condominiums and contained an arbitration clause.

2

After the president of the Association's Board of Directors (the "Board") signed the Agreement, the Association filed suit against Bayside, Beachside, and TSG. It argued, *inter alia*, that the Water Supply Agreement was void because (1) the Board was coerced into signing it and (2) the Board lacked the authority to enter into the Agreement. The District Court dismissed the suit and referred the matter to arbitration.

In the subsequent appeal, we affirmed in part, vacated in part, and remanded. We held that the District Court had not addressed a bona fide question as to whether the Board's entrance into the Water Supply Agreement was an *ultra vires* action. We stated that amending the Declaration required a 67% vote of Unit Owners and reasoned that the need for such a vote depended on whether the Water Supply Agreement was an amendment to the Declaration. Accordingly, we vacated the District Court's order and remanded for additional discovery on the issue.

On remand, the District Court concluded that the Declaration provided a broad grant of authority for the Board to manage the affairs of the Association. It reasoned that because the provision of water was an "affair" of the Association, the Board was authorized to execute the Water Supply Agreement. The Court did not make any findings as to whether the Water Supply Agreement was an amendment to the Declaration and again referred the matter to arbitration. The Association appealed.

On the second appeal, we found that we lacked jurisdiction over the matter because the District Court's order referring the case to arbitration was an unappealable interlocutory order. However, we found that we had the authority to hear the appeal as a

petition for a writ of mandamus pursuant to 28 U.S.C. § 1651. We stated that the District

Court never mentioned the amendment issue that we directed to its attention and thus

failed to address the question we had put before it on remand. Consequently, we issued a

writ of mandamus directing the District Court "to determine whether the Water Supply

Agreement constituted an unauthorized amendment of the Declaration of Condominium

and, based upon this determination, whether the Board was authorized in law and fact to

enter into the Water Supply Agreement." *SBRMCOA II*, 596 F. App'x at 88.

On the second remand, the District Court found that only one provision of the

Water Supply Agreement was *ultra vires* and that that provision was severable from the

Agreement. First, the District Court stated that when it reviews *ultra vires* acts regarding

a contract with an arbitration clause, it is limited to considering (1) whether the contract

as a whole is *ultra vires* and (2) whether the arbitration clause is *ultra vires*. The District

Court then examined the Association's By-Laws and noted that the Declaration could

only be amended by a vote of at least 67% of Unit Owners. After stating that no party

asserted or provided any evidence that such a vote had occurred, the Court concluded that

the Water Supply Agreement did not validly amend the Declaration.

However, this finding did not end the Court's analysis. The District Court then

turned to interpreting our mandate:

> While that conclusion may appear on its face to resolve the question of whether
> the Water Supply Agreement was an amendment to the Declaration, the Court
> understands the Third Circuit mandate as a direction to fully address the spirit of
> the dispute. Thus, the Court's inquiry is not over. . . . [H]aving reviewed the
> mandate, the Court concludes that the Third Circuit is instructing the Court . . . to

4

determine whether the Water Supply Agreement conflicts with the Declaration and is an *ultra vires* undertaking by the Board.

*SBRMCOA, LLC v. Bayside Resort, Inc.*, Civ. No. 2006-42, 2016 WL 4728103, at *6 (D.V.I. Sept. 8, 2016) (citation omitted).

Following this interpretation, the Court determined that it had to engage in the following two-part inquiry: (1) whether any provisions of the Water Supply Agreement conflicted with the Declaration and (2) if a provision of the Water Supply Agreement conflicted with the Declaration, whether that conflict rendered the Agreement as a whole, including the arbitration clause, *ultra vires*, or just raised a question of severability.

In its analysis, the Court held that the Board took *ultra vires* action with regard to Section 1.C.ii of the Water Supply Agreement, which allowed for the collection of charges for potable water as a common expense.[1] The Court found that Section 1.C.ii was an unauthorized amendment because the Board could not declare potable water to be a common expense in derogation of Section 3.J.1 of the Declaration, which provided that potable water was an expense individually charged to each Unit Owner.[2]

---

[1] Section 1.C.ii of the Water Supply Agreement is as follows:
> The COA [(Sapphire Beach Resort and Marina Condominium Association)] hereby accepts [the assignment of the right to exercise all of the rights and obligations of Bayside under Section 3.J.1 of the Declaration] and agrees to assume the duties of providing potable water to individual unit owners and *to collect the assessed charges for potable water as a common utility expense . . . .*

J.A. 74 (emphasis added).

[2] Section 3.J.1 of the Declaration provides:
> Potable water shall be supplied by the Sponsor, its successors or assigns, through the Common Interests of the Condominium directly to each Unit and *each Unit Owner shall be required to pay to the Sponsor the charge therefore established,*

Next, the District Court explained that neither Section 1.C.ii nor any other provision of the Water Supply Agreement that the Association argued was *ultra vires* was an arbitration provision. The Court concluded that none of the provisions of the Agreement that had been viewed as *ultra vires* rendered the Agreement *ultra vires* as a whole.

The District Court also dismissed the Association's argument that the Declaration, by its plain language, prevented Bayside from entering an agreement for more than one year, and thus was *ultra vires* with respect to Bayside because it had a duration greater than one year. The District Court stated that the Declaration was the charter of the Association, not Bayside, and, as a result, did not restrict Bayside's authority because there was no evidence that the Declaration, or the By-Laws enacted under the Declaration, were Bayside's corporate documents. As such, the Court determined, neither the Declaration nor the By-Laws "generally restrict[ed] Bayside's authority." *Id.* at *9.

Finally, the District Court held that when Bayside entered into an agreement that would bind the Association or the Board for more than one year, its actions were *ultra vires* only when it contracted *on behalf of* the Association or the Board. The Court found

---

*from time to time, by the Sponsor.* Sponsor hereby reserves the right to establish reasonable charges for potable water and in determining such charge shall consider, among other things, its cost of installing, constructing, maintaining, operating, repairing and replacing the equipment necessary to provide such water and cost of capital in connection therewith.

J.A. 102 (emphasis added).

that Bayside's actions were not *ultra vires* because it entered into the Water Supply Agreement *with* the Board and the Association, not on their behalf.

Upon finding that none of the provisions in the Water Supply Agreement rendered either the Agreement as a whole or the arbitration clause, in particular, *ultra vires*, the District Court referred the matter to arbitration. This timely appealed followed.

## II.     Analysis[3]

The Association argues that the District Court failed to follow our mandate and that we should issue yet another writ of mandamus. "[T]he Supreme Court has 'consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *United States v. Kennedy*, 682 F.3d 244, 252 (3d Cir. 2012) (quoting *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948) (citing cases)). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* at 253 (internal quotation marks omitted). "We must examine whether the District Court adhered to the mandate in our . . . opinion or whether it ventured beyond its authority." *Id.* When following the mandate, the District Court "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. We have jurisdiction pursuant to 28 U.S.C. § 1651. We review adherence to our mandate de novo. *United States v. Kennedy*, 682 F.3d 244, 253 n.7 (3d Cir. 2012).

7

as has been remanded." *Id.* at 252 (quoting *Ex parte Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492 (1838)).

In *SBRMCOA II*, we ordered the District Court to determine the following:

> [W]hether the Water Supply Agreement constituted an unauthorized amendment of the Declaration of Condominium and, based upon this determination, whether the Board was authorized in law and fact to enter into the Water Supply Agreement.

596 F. App'x at 88. In our view, the District Court implemented both the letter and the spirit of our mandate. Because we are reviewing a petition seeking a further writ of mandamus, our analysis is limited to whether the District Court followed our mandate. The answer to that question is either yes or no; that is, either it did follow the mandate or it did not. We are not reviewing for *how* the District Court followed our mandate; that is a merits question properly determined through direct appeal. Thus, our review is limited, and we will proceed accordingly.

## A.     Letter of the Mandate

### 1.     Whether the Amendment Was Unauthorized

The District Court first addressed whether the Water Supply Agreement was an unauthorized amendment of the Declaration. The Court reviewed the Declaration's amendment process and found that the Water Supply Agreement did not validly amend the Declaration because the Board did not obtain the necessary votes of the Unit Owners. Although it found that the Water Supply Agreement did not validly amend the Declaration, the Court concluded the Agreement as a whole was not unauthorized.

8

To come to this conclusion, the District Court first reasoned that "without a valid amendment of the Declaration, it follows that any conflict between a provision in the Water Supply Agreement and the Declaration only informs the Court that such a provision in the Water Supply Agreement is void." *SBRMCOA, LLC*, 2016 WL 4728103 at *6. The District Court then asserted that it had to engage in the following two-part analysis:

> (1) whether any provisions of the Water Supply Agreement conflict with the Declaration; (2) if a provision of the Water Supply Agreement conflicts with the Declaration, whether that conflict renders the Water Supply Agreement as a whole, including the arbitration clause, *ultra vires*, or merely raises a question of severability.

*Id.* at *7. As such, the District Court categorized its inquiry as determining whether any portion of the Water Supply Agreement conflicted with the Declaration and, if so, whether those conflicts rendered the whole agreement unauthorized.

After conducting this analysis, the District Court determined that "none of the provisions of the Water Supply Agreement that [the Association] contends are beyond the authority of the Board render the Water Supply Agreement as a whole . . . *ultra vires*" because they were severable and consequently void. *Id.* at *8. As a result, the District Court found that the Water Supply Agreement as a whole was not *ultra vires* and thus was not an unauthorized amendment to the Declaration. This finding was responsive to our mandate. Thus, the District Court followed the letter of the first prong of our mandate.

9

The Association argues that the District Court did not need to determine whether the Water Supply Agreement conflicted with the Declaration because we had previously recognized that fact. It also argues that even if the Board adopted a resolution modifying the Declaration in a way that did not conflict with it, the Water Supply Agreement would be *ultra vires* because any modification to the Declaration would have required a 67% vote of the Unit Owners. The Association further contends that the District Court failed to consider Section 1.d of the Water Supply Agreement and the deposition testimony of then-Board President Myron Poliner in its amendment determination.

These arguments criticize *how* the District Court followed our mandate. While the Association may disagree with the analysis that led to the District Court's conclusion, that does not implicate *whether* the District Court failed to follow the letter of the mandate. The District Court's analysis is not at issue so long as it determined whether the Water Supply Agreement was or was not unauthorized. Because it did just that, the District Court complied with the letter of our mandate.

### 2. Whether the Board Had the Authority to Enter into the Agreement

The District Court held that the Board had the authority to enter into the Water Supply Agreement in the following one-line conclusion: "The [District] Court previously held that the Board did have the authority to enter into a water supply agreement." *Id.* at *6 (citing *SBRMCOA, LLC v. Bayside Resort, Inc.*, Civ. No. 2006-42, 2013 WL 5781228, at *4 (D.V.I. Oct. 25, 2013)). Because the District Court found that the Water Supply

10

Agreement was not an unauthorized amendment to the Declaration, the Agreement, excised of the conflicting provisions, was simply a contract into which the Board had the authority to enter. Thus, the District Court addressed the second prong of our mandate.

### B. Spirit of the Mandate

While we have not articulated how a district court may fulfill the "spirit of the mandate," we have explained what violates that spirit: "When the proceedings on remand result in an outcome that is grossly incongruous with the purpose for which the remand was ordered, the spirit of the mandate is violated." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 197 (3d Cir. 2007). The District Court acknowledged and understood "[our] mandate as a direction to fully address the spirit of the dispute." *SBRMCOA, LLC*, 2016 WL 4728103, at *6.

> In addressing the spirit of our mandate, the Court interpreted it as follows:
>
> [H]aving reviewed the mandate, the Court concludes that the Third Circuit is instructing the Court, among other things, to determine whether the Water Supply Agreement conflicts with the Declaration and is an *ultra vires* undertaking by the Board.

*Id.* The analysis that flowed from this interpretation resulted in the Court finding that the Board could enter into the Water Supply Agreement since the provision that conflicted with the Declaration did not make the whole Agreement *ultra vires*. The Association argues that the District Court avoided the requirements of our mandate because it ignored whether the Water Supply Agreement improperly amended—or purported to amend—the Declaration and focused solely on whether the Water Supply Agreement conflicted with

11

the Declaration.  However, this argument fails to indicate how the District Court's interpretation of our mandate was "grossly incongruous with the purpose for which the remand was ordered."  *CGB Occupational Therapy*, 499 F.3d at 197.  Rather, the Association's argument attacks how the District Court addressed the issue.

The purpose of the second remand was for the District Court to determine (1) whether the Water Supply Agreement was an unauthorized amendment—which it did— and (2) whether the Board could enter into the Agreement based on that determination— which it also did.  Based on the District Court's failure on the first remand to address the issue of whether the Water Supply Agreement was an amendment, in *SBRMCOA II* we stated that its ruling was "at least incongruous with the 'spirit' of our mandate."  596 F. App'x at 88 (citing *Kennedy*, 682 F.3d at 253).  In the case before us, the District Court did not fail to consider the amendment issue.  Importantly, we did not tell the District Court how to answer the questions that we put to it on remand.  We expressly stated that "[o]ur decision to return this to the District Court again should not be understood as implying any view on the questions presented."  *Id.* at 88 n.7.  As such, the Court's decision to examine which portions of the Water Supply Agreement conflicted with the Declaration and whether those conflicting provisions either made the Agreement as a

12

whole *ultra vires* or were severable was the District Court's prerogative.[4]  It was not

"grossly incongruous" with the purpose of our mandate.[5]

### C.      The Association's Merits Arguments

"A petition for a writ of mandamus must demonstrate the district court committed

a clear error of law at least approach[ing] the magnitude of an unauthorized exercise of

judicial power, or a failure to use that power when there is a duty to do so."  *Trans Penn*

*Wax Corp. v. McCandless*, 50 F.3d 217, 227 (3d Cir. 1995) (alteration in original)

(internal quotation marks omitted).

The Association raises three additional arguments to support its petition for a

further writ of mandamus.  First, the Association attacks the District Court's use of an

overturned Eighth Circuit case to support the proposition that when a provision of a

contract is *ultra vires*, the remainder of the contract may still be enforceable.  Next, the

Association argues that the District Court improperly determined that the Declaration did

---

[4] The District Court noted that its review of whether the Agreement conflicted with the Declaration was a precautionary analytical step:
> [B]ecause the severability issue is for the arbitrator, not the Court, it was only with an abundance of caution and in an effort to fully comply with the letter and spirit of the Third Circuit's mandate that the Court addressed whether the Water Supply Agreement conflicted with the Declaration.

*SBRMCOA, LLC v. Bayside Resort, Inc.*, Civ. No. 2006-42, 2016 WL 4728103, at *8 n.7 (D.V.I. Sept. 8, 2016).  However, the District Court's precautionary step does not make its analysis "grossly incongruous" with the spirit of our mandate.  *See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 197 (3d Cir. 2007).

[5] As an alternative remedy, the Association asks that we revise and reissue our mandate to direct the District Court to enter an order denying the motion to compel arbitration. Because we find that the Court followed our mandate, we decline to take the requested step.

13

not bind Bayside. Finally, it asserts that the District Court failed to address the argument that the Water Supply Agreement was *ultra vires* because it requires the Association to pay Bayside's debts through the increase in the price of water. However, these remaining arguments go to the merits of the District Court's decision rather than to whether the Court followed our mandate. *See Kennedy*, 682 F.3d at 253 ("We must examine whether the District Court adhered to the mandate in our . . . opinion or whether it ventured beyond its authority."). As such, they do not demonstrate the District Court's failure to use its power to address the issues in our mandate. Thus, they do not support granting the petition for a further writ of mandamus.

## III. Conclusion

For the foregoing reasons, we will deny the petition for a further writ of mandamus.[6]

---

[6] Judge Fuentes disagrees that the District Court complied with our mandate. Our mandate directed the District Court to determine whether the Agreement was an attempt to amend the Declaration, in light of the fact that the Declaration required a 67% vote of Unit Owners and all parties agreed that no such vote took place. In Judge Fuentes's view, the District Court missed the rationale for our mandate when it concluded that the Agreement was validly formed because it could not be an amendment to the Declaration since no vote occurred. He also believes that the District Court's additional analysis does not remedy this misstep and further compounds it because if the Agreement was validly formed, we have no jurisdiction to analyze the validity of the contract as a whole. *See SBRMCOA, LLC v. Bayside Resort, Inc.* (*SBRMCOA I*), 707 F.3d 267, 271 (3d Cir. 2013) (noting that while "challenges to the *formation* of a contract are 'generally for courts to decide,'" "challenges to the validity of the contract as a whole are for the arbitrator to decide").

14